JOHN NEIL McNICHOLAS, ESQ.
CA Bar No.: 138304
McNICHOLAS LAW OFFICE
464 Palos Verdes Blvd.
Redondo Beach, CA 90277
(310) 545-0780
(310) 546-6831- FAX
john@mcnicholaslawoffice.com
Attorney for Defendant,
Aaron Eason

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON EASON,<br><br>Defendant. | Case No. 18MJ02791<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS RELEASE PENDING TRIAL** |

Defendant, AARON EASON ("Mr. Eason"), by and through his attorney of record, John Neil McNicholas, hereby submits the following memorandum in support of his request to be released pending trial. The proffered facts are supported by the complaint filed by the government, the pretrial services report, the declaration of counsel, the attached exhibits and can additionally be proven with witness testimony as well as supporting law as more specifically outlined below.

DATED this 1st day of November, 2018.

McNICHOLAS LAW OFFICE

By /s/
JOHN NEIL McNICHOLAS, ESQ.
Attorney for Defendant,
AARON EASON

1

# I. FACTS

### A. Charges

Mr. Eason is charged in a complaint with the crimes of carrying on a riot and conspiracy in violation of 18 U.S.C. § 2101 and 371. The minimum penalty for this offense is probation. The maximum term of imprisonment if convicted is 5 years. The charges against him are based upon Mr. Eason's alleged association with the Rise Above Movement (RAM), which he disputes. The case arises from alleged physical altercations between left wing groups who claim to be "counter-protesting" at organized events featuring conservative and right wing groups, where the defendants and others were present. The complaint includes Mr. Eason for a brief period in March-April, 2017, which is after the Huntington Beach rally and prior to the April 15, 2017 Berkeley rally. Despite the allegations in the complaint, Mr. Eason's presence was never intended to incite a riot or illegal activities. His goal was to attended organized events in order to protect speakers and other attendees from violent outbursts from far left activists wearing masks, who had previously inflicted violence on conservative citizens practicing their First Amendment rights to peacefully assemble and speak. The evidence clearly shows that any involvement by Mr. Eason was to defend and to protect the innocent. Outside of limited meetings and communications with his codefendants, he does not know any of and will seek severance at trial.

### B. Defendant's Background

Aaron Eason is 38 years old. He was born and raised in the Central District of California. He did not graduate from high school, but obtained a GED. He has lived on the family property in Anza, California for most of his life. He lived in Portland, Oregon for a few years in high school after his parents divorced. Outside of two family trips as a child to Mexico, he has never been outside of the United States. Mr. Eason has never owned or possessed a passport. Currently, Mr. Eason lives on the Anza property with his 13 year old daughter, for whom he is the sole

care giver and provider. Additionally, his father, Walter, and brother, Tim share a home with them. Mr. Eason's sister, Malia, her family, and his mother Nicki, reside in a separate residence on the same property. Walter Eason owns the property. Walter, Malia and Tim are willing sureties.

Mr. Eason has been allowed to live on the family property in exchange for his assistance as a property maintenance worker, landscaper, handyman, and cook for the family. Additionally, Mr. Eason works independently, including performing landscaping work for the community of Anza and S.E.A. (See Exhibit 1), and yard maintenance for his brother in law, D.C. in the local area (Exhibit 2). He has also been employed at a winery and a feed store in the area where he lives. Walter Eason is employed by a company that sells gold mining memberships in Temecula, California and receives social security. Tim is employed as a well driller in the Anza area. Malia is a bookkeeper.

Mr. Eason was never arrested before October 28, 2018. Mr. Eason is not a member of RAM. Mr. Eason has never worn a mask or other costume to a rally, speech or political event. Despite the allegation in the complaint, Mr. Eason never taped his hands at a rally. Mr. Eason never brought a weapon, stick or shield to an event. He is the only defendant in this case who was not photographed while at an organized event. *See* Exhibit 3 which shows three co-defendants in seemingly active photographs, while the photograph of Mr. Eason is one of him smiling at the DMV. Mr. Eason has never been to Charlottesville, Virginia. The complaint does not include any evidence which shows that Mr. Eason's intent was to incite or carry on a riot.

**C. Berkeley Rallies**

Evidence reveals that at the Berkeley rallies, weapons were carried by what the FBI calls "counter-protestors" but are actually agitators who are also Antifa members. Antifa members claim to be anarchists, but address each other as if they are communist revolutionaries. Many of them wear masks to hide their identities

when they commit violent acts against the innocent. Antifa member Eric Clanton was filmed severely injuring an unsuspecting Donald Trump supporter engaged in political discourse with a bicycle lock and chain (Exhibit 4). Louise Rosealma, of Oak Roots Collective was filmed carrying a wine bottle as a weapon (Exhibit 5). Exhibit 6 shows Antifa attempting to shut down traffic in Berkeley, and "Trump supporters" assisting the vehicles in avoiding violent damage caused by Antifa. Exhibit 6 also shows an Antifa member striking a Trump supporter with a skateboard. General disgraceful and offensive behavior is shown in Exhibit 7 where an Antifa member with motorcycle helmet seizes water from a World War II veteran in wheelchair and then sprays it all over the helpless victim. There is no evidence that Aaron Eason, or any of his associates, brought weapons to the April 15, 2017 rally. As stated above, Mr. Eason's goals were to protect the free speech and assembly rights of the innocent, and not to act as an agitator or aggressor.

**D. Mr. Eason voluntarily surrendered to the FBI**

Mr. Eason learned that a warrant had been issued for his arrest on October 25, 2018. Not understanding the legal system, Mr. Eason attempted to contact criminal defense attorneys in his area. Eventually, Mr. Eason decided to contact attorney Augustus Invictus who is based in the State of Florida. On October 26, 2018, Mr. Invictus agreed to represent Mr. Eason and immediately made plans to travel to see Mr. Eason in California. Mr. Invictus feared that the FBI would not potentially place Mr. Eason in a position of peril. Therefore, Mr. Invictus advised Mr. Eason to wait for Mr. Invictus to travel from the State of Florida to Mr. Eason's home so that they could drive together to the FBI office in Westwood and Mr. Eason could voluntarily surrender. Mr. Eason voluntarily surrendered to the FBI office on Sunday, October 28, 2018 and has remained in custody ever since.

## II. ARGUMENT

18 U.S.C. § 3142 "mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will

1  reasonably assure the appearance of the person as required and the safety of any
2  other person and the community.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th
3  Cir. 2008) (*quoting* 18 U.S.C. § 3142(e)). In order to detain Mr. Eason, the
4  Government must prove by a preponderance of the evidence that the defendant is a
5  flight risk.  Additionally, the Government must prove by clear and convincing
6  evidence that Mr. Eason is a threat to the community.  18 U.S.C. § 3142(f).  Clear
7  and convincing evidence means proof that a particular defendant actually poses a
8  danger, not that a defendant in theory poses a danger.  *United States v. Patriarca*, 948
9  F.2d 789 (1st Cir. 1991).

10  Certain factors are outlined in 18 U.S.C. 3142(g) for the Court to Consider in
11  determining whether a person should be released:

12  The history and character of the person, including the length of his residence
13  in the community, community ties, the status and history of his employment, his
14  relationships with his spouse, children, parents and other members of his family and
15  with his close friends, his reputation, character and mental condition.  "Community
16  ties" means both the community of arrest and the community where the defendant
17  normally resides.  *United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990).

18  Mr. Eason has strong ties to the community, where he has been a resident for
19  his entire life.  All of his relatives, including his mother, father, brother, sister, and
20  daughter, not only live in the Central District of California, but live with him. They
21  all hope that he can rejoin the family and contribute to the welfare of the family.

22  Other factors for the Court to consider are Mr. Eason's prior criminal
23  record, which he lacks, the nature of and circumstances of the offense with which
24  he is charged, including whether it is a crime of violence or drugs. The weight of
25  evidence against the person is the least important factor because the Court cannot
26  make a pretrial determination of guilt.  *United States v. Motamedi*, 767 F.2d 1403, 1408
27  (9th Cir. 1985). Since the complaint emphasizes a lengthy pattern of the alleged
28  unlawful activity, the only time that Eason is noticeably involved is in preparation

for the April 15, 2017 Berkeley rally. Although there is evidence that Mr. Eason rented a van and traveled to Berkeley with other participants, there is little evidence that he incited or carried on a riot. The exhibits produced certainly show there are differing viewpoints as to what occurred on that day.

The minimal prison exposure (5 years maximum) would not justify any reasonable member of the community from fleeing. Additionally, it would be grossly unfair to Mr. Eason to allege that he was a fugitive from justice, and thus a flight risk, when he voluntarily surrendered to the FBI Los Angeles office only a few days after learning that a warrant had been issued for his arrest. As stated above, he consulted with legal counsel who was worried that the FBI could inflict violence upon Mr. Eason, and therefore instructed him to wait patiently for his arrival from Florida so that they could surrender at the office of the FBI which they did on a Sunday afternoon.

Also, the Court must consider the nature and seriousness of the danger to any person of the community that would be posed by the person's release. Mr. Eason has never been arrested in his life prior to submitting himself to the FBI on October 28, 2018. He has no history of violence, including in this FBI investigation, where the only alleged evidence is of his renting a van to go to Berkeley, of passing a message along for defensive training, and of him standing nearby when physical altercations occurred.

Mr. Eason does not wish to be associated with any acts of violence or inciting riots. He has lived a law abiding life despite the allegations in the complaint. There is no doubt that a combination of conditions could be set to ensure that Mr. Eason is not a flight risk or a danger to the community.

### III. Proposed Release Order

Mr. Eason proposes the following release order:

1. An appearance bond be posted in the amount of $100,000.00 apportioned to his father, Walter Eason, sister, Malia Carlin and brother, Timothy

Eason.

2. Intensive Pretrial Supervision which includes:

    a) Mr. Eason's executing a declaration that he does not possess a passport;

    b) Mr. Eason's travel restricted to the Central District of California and to reasonable curfew restrictions.

    c) Mr. Eason should not be permitted to enter any airport, seaport, railroad, or bus terminal which permits exit from the Continental United States or area of restricted travel without Court permission;

    d) Mr. Eason's residence is to be approved by Pretrial Services and shall not relocate without Pretrial Services approval;

    e) Mr. Eason must avoid all contact with co-defendants or potential witnesses;

    f) Mr. Eason is not to use or possess illegal drugs, possess firearms, and agrees to search and seizure of his person and property.

## IV. CONCLUSION

Based upon the foregoing, defendant AARON EASON respectfully requests that this Honorable Court release him pursuant to the above-stated conditions.

DATED this 1st day of November, 2018.

                                        McNICHOLAS LAW OFFICE

                                        By /s/
                                        JOHN NEIL McNICHOLAS, ESQ.
                                        Attorney for Defendant,
                                        AARON EASON

**DECLARATION OF JOHN NEIL McNICHOLAS**

I, John Neil McNicholas, do hereby declare under penalties of perjury that the following is true.

1. I am an attorney duly licensed in the State of California and I am attorney of record for Aaron Eason in *United States of America v. Rundo, et al*, CR 18-MJ-02791-4.

2. Exhibit 1 is true and correct copy of a character letter from S.E.A.

3. Exhibit 2 is a true and correct copy of a character letter from D.C.

4. Exhibit 3 is a press photograph display of the four defendants in this case.

5. Exhibit 4 is a screen shot of an unsuspecting Trump supporter being struck over the head by a bicycle lock swung by Antifa member Eric Clanton.

6. Exhibit 5 is a screen shot of Louise Rosealma carrying a wine bottle as an assault weapon at the Berkeley rally.

7. Exhibit 6 shows Antifa attempting to shut down traffic in Berkeley, and "Trump supporters" assisting the vehicles in avoiding violent damage caused by Antifa. Exhibit 6 also shows an Antifa member striking a "Trump supporter" with a skateboard.

8. Exhibit 7 is a screen shot of an Antifa member seizing a World War II veteran's water bottle and drenching the helpless man at the Berkeley rally.

Dated this 1st day of November, 2018 in Redondo Beach, California.

*/s/John Neil McNicholas*
John Neil McNicholas